## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**NICK P. ARAGON,**

        Plaintiff,

vs.                               Civ. No. 05- 931 JP/ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed January 18, 2005. [Docket No. 10.] The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is not well taken and will be denied.

### I.  PROCEDURAL RECORD

    1.    Plaintiff, Nick Aragon, filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on July 21, 2003. Tr. 357, 362. He alleged that he was disabled since August 14, 2001 due to a right arm injury sustained while installing a spa system. Tr. 57, 375.  His application was denied at the initial and reconsideration

---

[1]An Order of Reference was filed on December 7, 2006.  [Docket No. 9.]

level.

   2. The ALJ conducted a hearing on February 23, 2005.  Tr. 369.  At the hearing, Plaintiff

was represented by an attorney.  On April 28, 2005, the ALJ issued an unfavorable decision.  Tr. 25-

24.  The ALJ found at step five, based on the testimony of a vocational expert and using the "grids"

as a framework, that Plaintiff was not disabled.  Tr. 23.  On May 11, 2005, Plaintiff filed a request

for view with the Appeals Council.  Tr. 8-11.  On July 5, 2005, the Appeal Council issued its decision

declining review of the ALJ's decision.  Tr. 5.  Thus, the ALJ's decision is the final decision of the

Commissioner.  20 C.F.R. § 404.984(a) & (d).  Plaintiff filed his Complaint for judicial review of the

ALJ's decision on August 31, 2005.

   3. Plaintiff was born on November 24, 1964 and was forty years old at the time the ALJ

issued her decision.  Tr. 80.  He has a high school education.  Tr. 109.  He was previously employed

as a maintenance worker, a tow truck driver, and as a pool and spa installer.  Tr. 83.

## II.  STANDARD OF REVIEW

   4. The standard of review in this Social Security appeal is whether the Commissioner's

final decision is supported by substantial evidence and whether she applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."

*Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)  (quoting

*Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ

is not supported by substantial evidence if other evidence in the record overwhelms the evidence

supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

   5. In order to qualify for disability insurance benefits, a claimant must establish a severe

physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

6.      At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### III.  MEDICAL HISTORY

7.      Plaintiff injured his right shoulder, right forearm and right upper arm in February 2001 while  installing a spa system. However he continued to work until August of 2001. Tr. 144. Plaintiff was diagnosed with right lateral epicondylitis.  Initially Plaintiff was treated conservatively and received extensive physical therapy. Tr. 132, 133, 136-39, 142-44, 146-149, 151-52. An x-ray of his right shoulder was within normal limits. Tr. 140.  In May of 2001,  Michael J. Archibeck, M.D. found that the Plaintiff continued to be "significantly symptomatic" and in addition to right lateral epicondylitis, diagnosed Plaintiff with recurrent right rotator cuff tendonitis. Tr. 130-31.   8        .

Dr. Archibeck ordered an MRI of Plaintiff's shoulder which was performed on June 6, 2001. The MRI showed that Plaintiff did not have a rotator cuff tear but found an "intrasubstance degeneration/tendinosis" and "[p]rominent arthropathy of the acromioclavicular joint..." Tr. 316. Richard T. Radecki, M.D., of New Mexico Spine Institute performed electrodiagnostic testing in July of 2001, the results of which were within normal limits for all muscle groups. Tr. 310. Dr. Radecki diagnosed Plaintiff with right cubital syndrome, demyelinating type. *Id.*

9.      At the time of the electrodiagnostic testing, Plaintiff's physical examination was essential normal. On physical examination, Dr. Radecki found the following:

> The deep tendon reflexes are +2 at the biceps, triceps, brachioradialis, patellae and Achilles. There is 5/5 strength in the upper and lower extremities. There are no signs of muscle atrophy. There is negative straight leg raise in the lower extremities. No skin lesions, swelling or discoloration of the skin in the upper and lower extremities. No signs of joint abnormalities, upper lower extremities. Range of motion of the neck is within normal limits, with no lymphadenopathy through the cervical area. Palpation through the cervical and thoracic areas without discomfort as well as over the lumbar paraspinals. Range of motion of the low back within normal limits. No sign of spinal instability per physical examination.

*Id.*

10.      Plaintiff continued to attend physical therapy and receive subacrominal injections. Tr. 299-308. In September of 2001, the Plaintiff underwent an ulnar nerve transposition of the right elbow and decompression of the right shoulder. Tr. 302.

11.      In January of 2002, Plaintiff underwent a right shoulder arthroscopy with arthroscopic labral debridement and subacrominal decompression and a left thumb pulley release. Tr. 280. One week later, Plaintiff was released for light work which was defined as "modified duties, no lifting over five pounds, no repetitive lifting, or overhead shoulder motion on the right, no climbing." Tr. 278. In March of 2002, his lifting restriction was increased to 10 pounds. Tr. 269. In August of

2002, William L. Ritchie, M.D., of New Mexico Orthopaedic Associates noted that Plaintiff's "range of motion [is] pretty smooth" and "minimally positive impingement signs" with neurological signs intact. Tr. 239. He further found that Plaintiff "actually had a very functional range of motion and in fact I think he is doing a little bit better in his daily activities than the exam represents..." *Id.* He recommended that Plaintiff continue on his modified duty work release restrictions "for a medium work level below the level of the waist with lifting up to 45 lbs., and a light work level above the level of the waist lifting up to 15 lbs." *Id.* He further recommended that Plaintiff not do "repetitive pushing, pulling, or grasping with the right arm." *Id.*

12.     In April of 2002, progress reports from Plaintiff's occupational therapist indicate that Plaintiff reported improved function and increased strength but complained of general soreness, stiffness, tingling and numbness in the ring and small fingers of the right hand, and difficulty with the right shoulder. Tr. 259. In June of 2002, Dr. Ritchie found on physical examination that Plaintiff had excellent range of motion of the right shoulder, no signs of impingement, with neurological and vascular signs intact and good motor strength. Tr. 248. On July 16, 2002, Plaintiff's physical therapist completed an assessment of functional capacity and stated that Plaintiff could sit, stand and walk for a total of seven hours in a normal workday. Tr. 246-47. He also found that Plaintiff was able to perform simple grasping, pushing and pulling of arms controls and fine manipulation with both upper extremities, but not able to crawl and climb or reach with the right upper extremity more than occasionally. *Id.*

13.     In December of 2002, Plaintiff again saw Dr. Ritchie for a new injury to his right shoulder. He had strained his trapezius muscle and was experiencing headaches. Tr. 231. He was taking Tylenol for the pain. Dr. Ritchie found that Plaintiff's shoulder motion was limited. In

December of 2002, Plaintiff was limited in overhead work to 15 pounds and limited in lifting, pushing and pulling to 45 pounds. Tr. 232.

14.      In March of 2003, Dr. Radecki found that Plaintiff had a range of motion within normal limits but diagnosed Plaintiff with ulnar entrapment at the elbow.  Tr. 218.  At Dr. Radecki's request another nerve study was performed on May 13, 2003.  Tr. 214.  The EMG needle examination "was within normal limits for all muscles tested through the shoulder, arm, forearm and hand." Tr. 213.  After the study, Dr. Radecki's plan was to continue with pain medication, obtain a "psych" evaluation and have Plaintiff return to the clinic when needed.  Tr. 214-217.

15.      In a letter dated November 19, 2003, Dr. Radecki stated that Plaintiff had reached maximum medical improvement and requested that Plaintiff be "retrained in a Division of Vocational Rehabilitation manner."  Tr. 211.

16.      In December of 2003,  David A. Bernstein, M.D. rated Plaintiff five percent disabled because of the loss of function in the right upper extremity.  Tr. 207-08.

17.      In February of 2004, Dr. Ritchie found that Plaintiff had almost a full active range of motion of the shoulder, which was neurologically and vascularly intact although "he has subjective numbness and tingling along the ulnar border of the forearm and hand."  Tr. 204.  He received an injection and was referred for more physical therapy.  Tr. 204.

18.      In October of 2004, Dr. Bernstein performed a physical examination which showed that Plaintiff was able to elevate  the right shoulder to 120 degrees but had difficulty with right hand gripping and fully extending the right elbow.  Tr. 348.  He also found no motor atrophy in the right hand and intact intrinsic muscle of the ulnar nerve with the flexor carpi ulnaris and the flexor digitorum profundus "all working normal."  *Id*.

6

Case 1:05-cv-00931-JAP-ACT   Document 15   Filed 05/05/06   Page 7 of 16

19.     In February of 2005, in response to a letter from Plaintiff's counsel, Dr. Radecki assessed the Plaintiff as having "chronic pain through the right shoulder girdle status post surgical intervention and persistent psychological stressors."  Tr. 346.  Dr. Radecki completed a residual functional capacity questionnaire at that time in which he found that Plaintiff could lift and carry less than ten (10) pounds frequently and occasionally, sit six hours in an eight-hour (8) workday, stand and walk six hours in a eight (8) hour workday or "without limitation," perform repetitive simple grasping, pushing and fine manipulation with the right hand only occasionally (with no limitations of the left upper extremity), and perform only limited pushing and pulling with the upper extremities. Tr. 345.

20.     The record also contains medical records concerning Plaintiff's mental health.   In August of 2002, a physical therapist recommended that Plaintiff seek psychological counseling "to develop better coping mechanisms to deal with his decreased level of activity..."  Tr. 240.

21.     Dr. Radecki referred Plaintiff to psychologist, Edward Naimark for "pain management counseling."  Tr. 158.  Dr. Radecki wrote that Plaintiff,  "probably needs evaluation also by a psychological assessor to see if he has reactionary depression or if this is true depression and needing treatment."  Tr. 213.  Dr. Naimark first saw Plaintiff on June 30, 2003.  With respect to Plaintiff's mental status, Dr. Naimark found the following:

> He seemed very unhappy, if not angry, that he was scheduled for an appointment at this office.  He was casually dressed.  No abnormalities of posture or gait were noted.  Eye contact was poor. There were no severe pain behaviors.  Through the interview, he appeared very angry and occasionally tearful.  He wouldn't provide answers to many of the questions. He wouldn't describe his mood although he stated that his wife would probably feel that he was angry most of the time.  Affect was primarily flat.  No abnormalities of thought or perception were noted.  There was no suicidal ideation at this time.  He has some prescribed medications but does not use them.  He is not smoking at this time.  He does consume alcoholic beverages but would not discuss this subject in any detail.  He was oriented to time, place and person.  No major problems with memory or concentration were reported or

observed.  He appeared extremely uncooperative during the entire interview.

Tr. 159.

Dr. Naimark found that "[i]t is highly doubtful that [Plaintiff] can benefit from pain management

counseling." *Id*.   Plaintiff failed to keep a follow-up appointment with Dr. Naimark on August 2,

2003.  Tr. 163.

        22.     In November of 2003, Dr. Radecki wrote in a letter that Plaintiff was seeing a

psychologist due to depression.  Tr. 211.

        23.     In November of 2003, a state agency physician completed the Psychiatric Review

Technique Form ("PRTF").  Upon review of the record the physician found  "there is no indication

of thought disorder or severe cognitive limitation.  Admits to good response to medication."  Tr. 214.

Although the state agency physician diagnosed depression and affective disorder he indicated the

impairments were not severe.  Tr. 180-92.  In May of 2004, on reconsideration, another psychiatric

consultant reviewed Plaintiff's medical records and found no "medical evidence...that would

substantiate [Plaintiff's] allegation of worsening of a depressive disorder."  Tr. 321.

        24.     In January of 2005 Plaintiff was referred by his attorney to Annette Brooks, Ph.D.,

clinical psychologist.  Tr. 323.  It appears from the record that the Plaintiff saw Dr. Brooks this one

time.  Dr. Brooks diagnosed the Plaintiff with having a major depressive disorder with marked to

severe impairment  in performing activities within a schedule, sustaining an ordinary routine without

special supervision, working with others and completing a normal workday and workweek without

interruptions from psychological based symptoms. Tr. 326-27.  Dr. Brooks also wrote the following:

> ....Formal mental health involvement has been limited to evaluations only and psychotropics
> prescribed by his medical providers....it is probable that psychological factors are
> contributing to the clinical picture....Mr. Aragon meets criteria for severe major
> depression....since at least 2003 and more likely since 2002....Based on the limited

8

information gleaned from Mr. Aragon, it is thought more likely that Mr. Aragon suffers from longstanding and undiagnosed Posttraumatic Stress Disorder (PTSD) related to childhood trauma....Difficulties with employment associated with psychological factors are predicted to be related to significant problems with sustained concentration and persistence as well as severe deficits in emotional management and social interactions.

Tr. 325-26.   Dr. Brooks found Plaintiff's current Global Assessment of Functioning ("GAF") at 37.[2]

25.      The record documents that Plaintiff was prescribed anti-depressant medication in 2003, 2004 and 2005.  Tr. 123, 127, 350, 378.

## IV. DISCUSSION

26.      Plaintiff asserts that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician; erred in finding at step 2  that the Plaintiff's alleged mental impairment was not severe; and failed to properly evaluate Plaintiff's mental residual functional capacity ("RFC").

Treating physician.

27.      Under the treating physician rule, the Commissioner generally gives more weight to treating physicians' opinions than to non-treating physicians opinions. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  An ALJ is required to assign the opinion of a treating physician controlling weight if it is both: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2).

---

[2]The GAF rates an individual's "psychological, social, and occupational functioning."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).  A score of 37 indicates some impairment in reality testing or communication OR major impairment in several areas such as work or school, family relations, judgment, thinking or mood.

28.    If a treating physician's opinion is not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1727 and 416.927."  *Watkins*, 350 F.3d at 1300.  The factors are:  length of the treatment and the frequency of examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; the degree to which the physician's opinion is supported by relevant evidence; consistency between the opinion and the record as a whole; whether or not the physician is a specialist in the area upon which the opinion is rendered; other factors brought to the ALJ's attention, which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at 1301.

29.    Plaintiff asserts that the ALJ did not give controlling weight to the opinion of Plaintiff's treating physician, Dr. Richard T. Radecki, a specialist in physical and rehabilitative medicine.  In this matter, the ALJ undoubtedly considered Dr. Radecki's treatment of the Plaintiff as well as his opinion of Plaintiff's functional abilities.   In her detailed and accurate summary of Plaintiff's treatment for his right arm condition, the ALJ specifically referred to Dr. Radecki's treatment and opinions.  The ALJ expressly refers to Dr. Radecki as a treating physician and states:

> Dr. Radecki completed a residual functional capacity questionnaire in February 2005 in which he opined the claimant could lift and carry less than 10 pounds frequently and occasionally, sit six  hours in an eight-hour workday and stand and walk six hours in a 8-hour workday or "without limitation," perform repetitive simple grasping, pushing and fine manipulation with the right hand only occasionally (with no limitation of the left upper extremity) and could perform only limited pushing and pulling with the upper extremities (Exhibit 13F).

Tr. 18-19.

30.    Plaintiff's argument that the ALJ did not give this opinion controlling weight fails for two reasons.  First, Plaintiff's reliance on the following statement is misplaced:

> I afford the findings of the state agency and the opinions of its non-examining experts
> considerable weight. I find the opinions grounded in the record and not opposed by a treating
> source, and I find them consistent with the record as a whole.

Tr. 19. This is true because the statement does not demonstrate that the ALJ did not give controlling

weight to Dr. Radecki's opinions. Moreover, in a later statement, the ALJ specifically states

otherwise. In her decision, the ALJ found that with the exception of a psychologist's opinion,

> I afford **all** (emphasis added) of the medical opinions of record considerable evidentiary
> weight and believe that the assessments of the claimant's residual functional capacity stated
> in this decision account for what these opinions provide about the claimant's functioning
> abilities. I have resolved all questions in favor of the claimant and essentially ruled out any
> use of the right upper extremity.

Tr. 22.

      31.     Thus, the statements in the ALJ's decision do not support Plaintiff's assertion that the

ALJ assigned less than controlling weight to Dr. Radecki's opinion regarding Plaintiff's RFC . The

ALJ properly considered Dr. Radecki's opinion and gave it the correct weight. *Howard v. Barnhart*,

379 F.3d 945, 947 (10th Cir. 2004) (finding that if the medical evidence does not conflict with the

ALJ's RFC determination, "the need for express analysis is weakened.")

      32.     Second, the ALJ's finding concerning Plaintiff's RFC does not support Plaintiff's

assertion. The ALJ found that:

> ...the claimant retains the residual functional capacity to perform a range of sedentary work.
> He is able to lift and carry 10 pounds occasionally and 10 pounds frequently, stand and walk
> six hours in an eight-hour workday, and sit at least six hours in an eight-hour day, but he is
> not able to feel, finger or perform fine manipulation with the right dominant hand, is not able
> to reach at or above shoulder level with the right upper extremity, and is not able to lift, push
> or pull with the right upper extremity.

Tr. 22. Dr. Radecki limited Plaintiff's use of his upper right extremity while the ALJ virtually ruled

out any use of Plaintiff's upper right extremity. Thus, the ALJ found that Plaintiff was more limited

functionally than Dr. Radecki.  Thus, any alleged error by the ALJ in her decision regarding Dr. Radecki is harmless error.  *Valdez v. Apfel,* 102 F. Supp. 2d 1203, 1206 *(D. Colo. 2000),* citing *Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001) (holding that remand was not required and that the ALJ's failure to mention treating physician's opinion was harmless error because the ALJ adopted the treating physician's recommendations).

<u>Step 2.</u>

33.     Plaintiff also asserts that the ALJ erred in finding at step two that Plaintiff's mental impairment was not severe.  Plaintiff asserts that the record demonstrates he suffered from a severe mental impairment following his work-related injury in February of 2001. Contrary to Plaintiff's assertion, the record demonstrates otherwise.

34.     At step two, the claimant must show that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities.  20 C.F.R. § 404.1520(c). Examples of basic work activities that pertain to mental impairments include: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision; and (4) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  At step two, the ALJ must apply a *de minimus* standard to determine whether an impairment significantly limits the claimant's ability to do basic work activity.  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).   But the mere presence or diagnosis of a condition is not sufficient to make a step-two showing.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  In determining whether a severe impairment exists, the Commissioner considers the "effect" of the impairment.   20 C.F.R. § 416.920(a).  Congress specifically noted that a "physical or mental impairment must be of a nature

12

and degree of severity sufficient to justify its consideration as the cause of failure to obtain any

substantial gainful work." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003), citing,

S.Rep. No. 1987, 83d Cong., 2d Sess., reprinted in 1954 U.S. Code Cong. & Ad. News 3710, 3730.

      35.      In her decision, the ALJ wrote:

> Thus, it appears that much of what Dr. Brooks describes as signs and symptoms of one or
> more mental impairments are actually the claimant's innate personality-that has never
> resulted in an inability either to work or to keep a job.
> ...
> Again, then, while the claimant since mid-2001 has intermittently exhibited signs and
> symptoms of depression or a severe depressive disorder, the record fails to document an
> impairment that has existed or been observed for 12 continuous months at a level that would
> more than minimally affect the claimants ability to work.

Tr. 20. The ALJ's findings are supported by the substantial evidence in the record.   In November

of 2003, a non-examining physician completed the PRTF. Tr. 180-192. A review of the PRTF shows

that the non-examining physician thoroughly reviewed Plaintiff's medical records. Tr. 192. He found

that Plaintiff has depression but that it is not severe.  Tr. 180, 192.  He further found that Plaintiff was

mildly restricted as to activities of daily living and difficulties in maintaining social functioning.  Tr.

190.  He found Plaintiff had no limitations in maintaining concentration, persistence or pace and had

never had an episode of decompensation.  *Id*.  In May of 2004, on reconsideration, another

psychiatric consultant reviewed Plaintiff's medical records and found no "medical evidence...that

would substantiate [Plaintiff's] allegation of worsening of a depressive disorder."  Tr. 321.

      36.      The ALJ properly noted that the record showed that Plaintiff refused medication and

counseling.  Specifically, the ALJ wrote:

> The record fails to establish both a record of treatment for depression (primarily because the
> claimant refused both medication and counseling) and persistence for any continuous period
> of 12 months or more.  While the claimant's physical status may well have restricted his daily
> activities...I find no evidence that a mental disorder is reasonably related to restricted
> activities of daily living or to difficulties in maintaining social functioning or concentration,

persistence or pace.

Tr. 16.

37.     In addition, outlined in the medical history portion of the proposed findings, Plaintiff was referred to Dr. Naimark for pain management counseling.  Dr. Naimark stated in his report that Plaintiff denied the presence of any emotional problems.  Tr. 158.  He further stated that  Plaintiff was uncooperative, angry and failed to keep a follow-up appointment.  Tr. 159, 163.  Dr. Naimark found that Plaintiff was oriented and had no major problems with memory and concentration.  Tr. 159.

38.     Plaintiff relies extensively on the report of Annette Brooks, Ph.D., clinical psychologist and asserts that the ALJ should have given more weight to her opinion.  Again, Plaintiff's reliance is misplaced.  Plaintiff was referred by his attorney for an evaluation of his disability claim.  Tr. 20.  Pursuant to the regulations, a doctor who evaluates a patient solely to provide a medical report in support of a disability claim is not an acceptable medical source.  20 C.F.R. §§ 404.1502, 416.902.


39.     Moreover, the ALJ properly discounted the opinion of Dr. Brooks.  She noted that Plaintiff saw Dr. Brooks on only one occasion and that the evaluation was to be used for his disability claim.  Tr. 20.  The ALJ also observed that much of the information about Plaintiff came from his wife.  In addition, the ALJ noted that Dr. Brooks' assessment was not consistent with her report of the interview and testing.  *Id.*

40.     Furthermore, the ALJ properly noted that the report of Dr. Brooks is not helpful to Plaintiff.  Dr. Brooks' evaluation provided no indication that Plaintiff was "any different in personality then when he was working on a regular and continuing basis."  Tr. 20.  Dr. Brooks described Plaintiff as having a "long-standing and pervasive" personality style that interfered with interpersonal reactions

14

and that she believed Plaintiff had PTSD relating back to this childhood.  Tr. 326; *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) ("The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in Roberts's (sic) mental capabilities disfavors a finding of disability (citation omitted).")

41.    While Plaintiff was diagnosed with depression and was prescribed medication he has not met his burden nor does the record demonstrate that Plaintiff's alleged mental impairment, depression, continued for at least 12 (twelve) months or that it was severe enough to prevent him from engaging in virtually any substantial gainful work.  *Barnhart v. Walton*, 535 U.S. 212, 218-20 (2002).

42.    Finally, as the Court finds that the ALJ's finding at step two is supported by the substantial evidence and the ALJ applied correct legal standards, the Court need not address Plaintiff's argument that the ALJ erred in failing to evaluate Plaintiff's mental RFC.

## <u>RECOMMENDED DISPOSITION</u>

I recommend finding that Plaintiff's Motion to Reverse or Remand the Administrative Decision be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque,

New Mexico 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are

filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**